The issue here is that the district court erred when it denied the motion to suppress because the facts known to Officer Bennett did not establish probable cause to search the car under the automobile exception to the warrant requirement. The district court misinterpreted the undisputed facts and misapplied the law. Where did these undisputed facts actually come from? I'm looking at the record on appeal and I looked at the district court record and the only thing, the only thing that's filed is the warrantless search waiver. The police report was never stipulated to, it was never offered into evidence, there was no hearing held, there were no facts seduced. I mean, it looks to me like on the record on appeal, what we've got is a warrantless waiver and your brief that says, quote, the facts are taken from the police report. And I guess in the world in which I live, I never understood any judge to be obligated to accept facts based on a document that doesn't appear anywhere in the record. We presumed, my colleague actually briefed the case, Ms. Griggers, and so we presumed that a hearing would, we had some, you know, the issues we raised, we presumed a hearing would be set. The court decided the issue based on the briefs, perhaps in part because in the government's response to the motion to suppress the first sentence, I believe, after the opening clause is that Mr. McGee correctly cited the facts in this case. Well, I get that, but then there is no factual record. I mean, there is no stipulation, there's no document, there's, I mean, how are we supposed to review a nothing, right? I mean, there's just, I mean, I'm just having a hard time trying to figure out what the factual record is that sustains this ruling because without a hearing or a stipulation that the police report may be received into evidence, there is no evidence. Now, I believe that you can accept an affidavit and an exhibit to a brief and you can say, okay, I'm going to accept that if there's no objection. But the only thing that was ever attached to any brief, like I said, was the warrantless waiver, which doesn't have any of the relevant facts that we're all dancing around and arguing about here, and I'm just, I'm somewhat baffled. Well, Your Honor, obviously we disagree with the court's ruling, but, and I think those were, the government did say that the facts were undisputed, but those points were made, and perhaps a hearing would have assisted with that then, but now we know how he ruled and it is a legal argument at this stage. Well, kind of. In the brief we get this comment that, well, if we actually had had a hearing, the gun barrel would have been glinting in the sunlight and I saw it, which would have completely changed the case, right? Your argument at that point becomes totally frivolous. I disagree. Well, okay. But. But. It becomes much harder. Well, the officer says that the center of the floor mat was raised, that is, that's what he said in his reporting, that's what the parties agreed to in the briefs at least, and to come back later, nine months later, and say the officer would testify to what appeared to be a portion of a gun barrel nine months later, not in his report, it's, that's a bit, that's a credibility question. There is a credibility question, but if the judge resolved that credibility question in favor of the, well, whatever, what ifs, I'm sorry. Don't be sorry, Your Honor, that's fine. These are, this is an issue in the case. I'm working off the judge's order is what I'm doing, and, you know, this officer was, he was updating a traffic citation and serving a misdemeanor warrant that second time around, and the touchstone of the Fourth Amendment text is reasonableness, and this is a non-technical commonsensical inquiry based on objective reasonableness, and a raised floor mat is not probative of anything incriminating, and the. Well, it's not just a raised floor mat, right, I mean, if you take the whole set of circumstances, you have the original statements made to the officer that apparently are false because he's observed 20 minutes later someplace where he shouldn't be if he's really going to the emergency room for his daughter. You have the furtive movement of reaching towards the shoe, which happens to cause you to go across the place where the gun actually was under the bump, and, I mean, and you've got he's obviously under the influence, and there's other things going on, right? No, there's no evidence or any assertion that he was under the influence. This all boils down to an assumed lie that was never verified, you know, Officer Bennett never asked him the second time around, hey, did you lie to me about your, your daughter? It's in a, it all, the evasive behavior is this assumed lie that was never verified and a floor mat raised in the center, and, and the judge somehow interpreted this undisputed issue of the floor mat being raised in the center as a preoccupation with whatever was hidden under the floor mat. This alleged evasive behavior was, was apparently based on this dishonest statement, which the first page of his order, but the, but Mr. McGee never ran, resisted, obstructed. He didn't, he never lied to the officer. Well, I mean, I'm sorry. He was never nervous or fidgety, and so with respect to this furtive movement, this inquiry is commonsensical based on non-technical, you know, the inquiry, I guess the Supreme Court's telling us not to over lawyer this inquiry. This is, he was reaching for his shoe, which the government concedes, this is how the officer wrote it up, and, because he didn't have it on, he was arrested, he's going to jail, and then the officer goes and gets his shoe. That is not a furtive movement, that, the common sense, what, what happened, commonsensically what happened was, he was reaching for his shoe, and look what Officer Bennett did after that. He went and got his shoe for him. So there is, there is, this all boils down to an assumed lie that was never verified and a floor mat raised in the center. And additionally, you know, I reviewed all of the, you know, seminal Fourth Amendment rules that come into this kind of a situation, and I was looking at an opinion that Judge Woolman wrote in 2017, the Maria Salgado case, and one of the well-settled rules in this analysis that, is that law enforcement can search any area under the automobile exception including closed containers that may obtain, may contain the object of the search. What was the object here? He, the officer didn't have one. And here, Officer Bennett said that McGee was reaching for his shoe, then he retrieved the shoe and took it to Mr. McGee. He wrote up the report this way, yet I believe the government sort of spun this into something more nefarious, and so did the court. But the reasonable, common sense, non-technical conclusion from Bennett's perspective is that he reached for his shoe because his shoe was off and he needed to wear it again before, you know, because he was going to jail. I mean, I don't think, this wouldn't even be probable cause in a search warrant case. If an officer approaches a judge with a search warrant application and says, I need a search warrant based on the fact that this person maybe lied and he was reaching for his shoe and there was a lump raised in the center, that warrant would not be signed. Probable cause is probable cause, whether it's in a search warrant or the officer standing there saying the automobile exception, right? And so, that necessarily has to be your argument, that what we've got here is, the officer can identify which crime is particularly afoot, cannot identify what he's actually searching for, and without those things, whatever you got, it's not probable cause, it's a hunch. Correct. Yeah. Go back to what Judge Erickson said at the outset of the argument. Was there ever a request for a hearing? Well, it wasn't explicitly made in the motion to suppress. I reviewed Rule 12 and the court's local rules anticipating your question, Judge Wolman, and it doesn't require us to ask for one. I think my colleague, Mr. Griggers, presumed a hearing would occur. I suspect the government presumed a hearing would occur, but nevertheless, it did not. Thank you. I'll reserve the rest of my time, if there are no further questions. But I did have one. Yes. What was the actual reason for the arrest itself? The first time, he was a wreck, and he cited him for unsafe driving, sent him on his way. That's when this alleged lie occurred. Saw him later, 30 minutes driving, wasn't able to pull him over immediately, but found him in the private driveway of his mother's house. Sleep. In his car, correct. That's when he updated the ticket to include driving on a suspended license and served a misdemeanor warrant. It had nothing to do with a gun. So that didn't justify an arrest. What justified an arrest? He had a misdemeanor warrant, active misdemeanor warrant. Okay, so that was the reason for the arrest. So once he's arrested, would there have been a basis for the police to search the car? Was the car going to be impounded or towed? No, sir. It was in a private driveway. This was not an impound situation. The car was released to his mother. The government concedes that in its briefing. The vehicle was released to his mother. So this was not inevitable in any way. I'll give you a minute and rebuttal since I used up the last of your time with my question. Thank you, Your Honor. Ms. Bragg? Thank you. May it please the Court, Counsel. My name is Allison Bragg, and I represent the United States of America, and we're asking this Court to affirm the district court's denial of the motion to suppress for two reasons. One, the officer had probable cause to conduct the search, and two, the appellant had a diminished expectation of privacy because he was a probationer with a signed search waiver on file. To speak to the first issue of probable cause, the officer did have probable cause to conduct that search. What facts supported probable cause? There's three factors that support that, Your Honor. First, Mr. McGee's evasive statement saying he was headed to the hospital when then he was found in the area a short time later. It's irrelevant whether that was true or not, whether he was headed to the hospital or not, and then had a change of events. What's relevant is what the officer believed about that. The officer was told, I'm headed to the hospital, and then the officer found him in the area just a few minutes later. At that time, the officer discovered the outstanding warrant that my opponent mentioned, which led the officer to reasonably believe that the defendant had lied about going to the hospital in order to evade arrest on that warrant. The second factor that supports probable cause is Mr. McGee's furtive gesture towards the floorboard. The fact that I think is outlined in the briefs is that Mr. McGee darted, the briefs use the word darted, for the floorboard, and that furtive movement elicited a safety response from the officer. When Mr. McGee darted for the floorboard, the officer reached for Mr. McGee's arms and instructed him not to make any more movements. Could he not have been innocently reaching for his shoes? He could have been, Your Honor, but again, it doesn't matter what he was doing in that scenario. What matters is what the officer interpreted him to be doing. There is some mention of the shoe, and the government doesn't contest that there was a shoe in the floor, but there was also the third factor that contributes to probable cause, which was a conspicuous raised lump. And like Your Honor has asked... And there's no evidence. Let's see. Did the defendant himself say, I was reaching for my shoe? By the time he was removed from the car, he then asked the officer, can you go get my shoe? I'm unaware if he said... Because there was no hearing, so we don't know what he was actually thinking or saying at the time. That's correct, Your Honor, but as you pointed out, could he have simply been reaching for the shoe? That can still contribute to probable cause, even if it was an arguably innocent action. This court made that decision in United States v. McGlynn in 1992, when it said that actions even, quote, arguably innocent to the layperson, end quote, when those actions are taken into consideration by a trained observer, like Officer Bennett was here, that action, even if arguably innocent, can be considered a contributing factor to probable cause. That also supports the reason that the third factor contributed to probable cause, and that third factor is the raised lump under the floor mat. There's nothing inherently illegal about a raised lump under the floor mat, but Officer Bennett, as was pointed out in McGlynn in 1992, used the totality of those circumstances, some of which could have been arguably innocent, to interpret the full course of conduct to say there are just too many things going on. We have this evasive statement. You said you were going to the hospital, yet here you are, and here's a warrant for your arrest. You say that you were reaching for your shoe, but here's a conspicuous lump under the floorboard, and the same floorboard that you just made a furtive gesture darting towards. And of course, this court has held numerous times that furtive gestures do contribute to probable cause. And again, why wasn't there a hearing on this, to test the officer's credibility? Your Honor, this court has held that... I don't care what this court has held, but why wasn't there one on this? Could you just tell us the straight answer as to why there was no hearing? The straight answer, Your Honor, is there was not a contested issue of fact. There was not a contested issue of fact. So then there was no request for a hearing? There was no request for a hearing. And under your local rules, you have to have a request? I'm unaware if you have to make a specific request, but I know the law says that if there's not a contested issue of fact. So basically, the Federal Public Defender's Office conceded the case. That would be our argument, Your Honor. So your argument, essentially, is if I write a brief and I set the facts in there, and my statement of facts may be incomplete or complete, doesn't really matter. If the government just responds and says, we don't dispute those particular facts, it's all over. Your Honor... I mean, because, you know, if you look at how distinct decisions are usually made, you know, like with evidence, right? Things that you could consider under the rules of evidence that come in and they sit there and a court can look at them. And what we've got now are just, you know, the opinion of counsel as to what the facts are and a statement that says, yeah, we're good with that. And I just am baffled by that. I mean, because in my practice, I mean, they're like, we're always affidavits that said, here it is. Or attached to the brief is a police report. We concede that these are the facts that we would produce at hearing, right? And then I get it. But I'm just, I just can't believe that without the police report itself, we're just going to take, like, we're sorry, Mr. Defendant, your lawyer wrote something down. You're stuck with it. Now we're out of here? Your Honor, that's consistent with what this Court said in the past. And in fact, in United States v. Stevenson, this Court said that without the defendant raising a contested issue of fact, there's no obligation on the district court to have a hearing. In the district court's order, he relied only on what those three factors were that I previously outlined. The evasive statement, the furtive gesture, the raised lump under the floorboard. And he said at the conclusion of his order that those three factors gave rise to probable cause that satisfied the automobile exception and that ended the inquiry. There are issues that could have been raised, but they weren't. And this Court said in Stevenson that it's not necessary to have that hearing. A district court presented with the motion to suppress need not hold an evidentiary hearing as a matter of course. That's from United States v. Yielding, also in this Court, in 2011. Further, a hearing is unnecessary if the district court can determine that suppression is unwarranted. And that's quoting United States v. Mims, also in this Court, in 1987. So the fact is that based on the uncontested facts, as my opponent pointed out, there was no contested issue of fact and the government agreed with the defendant's version of those facts. Based on that agreement, following 8th Circuit precedent, it was not incumbent upon the district judge to hold that hearing. What's the citation to Stevenson? I don't see it in your brief. Your Honor, I have the year in front of me, but I don't have the citation in front of me. I would be happy to... But it must be in your brief. Otherwise, you wouldn't be citing it, would you? It must be, Your Honor. I left my brief at my desk. Well, I'm looking at the table of authorities. Maybe it's a different case. Maybe it's hidden away. Did you write the brief? Your Honor, we have a brief writer that wrote it. And now that you ask me about this, I recall the issue of whether or not there was a hearing not being... Well, maybe you might want to suggest that it's not in my brief, but I ask the Court's under Rule 28J of the Rules of Federal Appellate Procedure that you may or may not be familiar with. You read my mind, Your Honor. I'll make that statement and ask for leave to cite that case. I believe in preparing for this hearing and reading through the briefs, the issues that were raised in the motion to suppress obviously didn't touch on whether there would be a hearing or not. Because... Surprising, this doesn't... I shouldn't express myself. I used to think that the Federal Defenders Office in Little Rock would contest the time of day. But apparently, they don't in this case. Your Honor is correct. In a lot of situations, I think they have literally contested the time of day. I know they did not do so here. And often, and I think in the District Court's estimation, it was a matter of efficiency. As this Court may know, our office has a very cordial relationship with the Public Defenders Office and don't get into controversies just for the sake of doing so, and in fact, try to promote judicial efficiency, which is part of why the Eighth Circuit has made those rulings that we've been talking about, that it's just not always necessary to have a hearing. And that was the District Court's feeling in this case. He felt that those three factors that we keep returning to established probable cause so clearly there was just no need to have a hearing to belabor those points. Your Honor, there are a few other issues, but if the Court doesn't have any questions about those other issues, I'll be glad to yield the remainder of my time. Thank you, Your Honor. Thank you. Mr. Byrd, your rebuttal. Your Honor, probable cause of search for contraband means a specific type of illegal contraband in a drug case, drugs, in a theft case, stolen property, in a gun case, a gun. There was no, he had no object for the search. He hadn't, there was no information whatsoever that Mr. McGee had a firearm. And with respect to, he was reaching for his shoe, that's what the officer said in his reporting, the government conceded that this is what he was doing, this was not a furtive movement. A furtive movement is something more evasive, sceptive, and that's not what happened. This is the only thing that this presumed lie in this movement for reaching for his shoe in the raised floor mat in the center is it. You've asked them to leave the vehicle and their first move is not to leave the vehicle but to reach towards something you can't see. Wouldn't that be a reasonable officer concerned for their safety would think that's not right? This is something I would prefer you not do right now. In a different case, sure. But in this case, Officer Bennett says he was reaching for his shoe and that's what he was doing. And then he, in fact, went and got his shoe. It's that simple. There was nothing suspicious about any of that conduct. And also this analysis, you know, we have to assume he was trying to, I'm out of time, but- You can answer the question. Thank you. If he was trying to, this assumption he was trying to evade service of a warrant presumes he knew about his misdemeanor warrant. So for all these reasons, I do believe that the court can make a decision to reverse the order denying the motion to suppress, grant it, and vacate Mr. McGee's conviction. Thank you, Mr. Byrd. Thank you also, Ms. Bragg. The court will take the case under advisement and will render decisions as promptly as possible.